GARY JOE,

                Plaintiff,

v.                                             5:14-CV-0423
                                                   (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| NICHOLAS, PEROT LAW FRIM<br>  Counsel for Plaintiff<br>219 First Street<br>P.O. Box 720<br>Liverpool, NY 13088 | MICHAEL J. WELCH, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL-REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | SIXTINA FERNANDEZ, ESQ. |

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Gary Merril Joe ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10,12.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

**I.      RELEVANT BACKGROUND**

   **A.      Factual Background**

Plaintiff was born on February 28, 1964. (T. 373.) He completed 10th grade. (T. 406.) Generally, Plaintiff's alleged impairments consist of arthritis, bad right hand, rotator cuff injury, neck problems, high blood pressure, and depression. (T. 401.) His alleged disability onset date is April 21, 2005 and his date last insured is June 30. 2007. (T. 396.) Plaintiff previously worked as a heavy equipment operator, laborer, and frogger. (T. 402.)

   **B.      Procedural History**

On February 16, 2007, Plaintiff applied for Social Security Disability Insurance Benefits ("SSD") under Title XVI and Supplemental Security Income ("SSI") under Title II. Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 15, 2009, Plaintiff appeared before ALJ Robert E. Gale. (T. 82-132.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on December 11, 2009. (T. 275-292.) On October 5, 2011, the Appeals Council granted Plaintiff's request for review, remanding his case. (T. 293-297.) On December 11, 2012, Plaintiff again appeared before ALJ Gale. (T. 133-272.) On February 11, 2013, the ALJ issued a written decision finding Plaintiff not disabled. (T. 21-58.) The Plaintiff again requested an Appeal Council review, which was denied on February 10, 2014. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 27-49.) First, the ALJ found Plaintiff met his insured dated through June 30, 2007 and further, Plaintiff had not engaged in substantial gainful activity since April 21, 2005. (T. 27-28.) Second, the ALJ found Plaintiff had the severe impairments of status post left rotator cuff surgery and left shoulder osteoarthritis with right shoulder involvement, cervical spine strain/sprain, multiple joint arthritis, sleep apnea, nasal polyps, allergic rhinitis, deviated septum, environmental allergies, obesity, and depressive disorder (as variously characterized). (*Id.*) The ALJ determined Plaintiff's medically determinable impairments of hypertension, hyperlipidemia, vertigo, gastroesophageal reflux disease, acid reflux, and poor vision were non-severe impairments. (T. 29.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1 ("the Listings"). (T. 31.) The ALJ specifically considered Listing §§ 1.02, 1.04, 3.10, 14.09, 1.00, 3.00,14.00 and 12.04. (T. 31-32.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to do "light work[1]" with additional mental limitations. (*Id.*) Specifically, Plaintiff could "use the right hand frequently to handle, finger, feel, push or pull without greater limitations; can occasionally lift overhead with the right arm; should avoid lifting above chest height with the left arm; can bilaterally and frequently use foot controls; has no postural limitations;

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b) and 416.967(b).

can occasionally work at unprotected heights in the vicinity of a moving mechanical parts; can occasionally operate a motor vehicle; can occasionally work in humidity and wetness, dust and other pulmonary irritants, temperature extremes, and vibrations; is limited to simple tasks; can perform tasks involving only occasional judgment required on the job; can occasionally interact with public, co-workers and supervisors; and can sustain sufficient attention and concentration to maintain a regular sustained performance of rote tasks." (T. 34.) Fifth, the ALJ determined that although Plaintiff could not perform his past relevant work, there were jobs that exist in significant numbers in the national economy Plaintiff could perform. (T. 46-49.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes five separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to determine Plaintiff's condition met or equaled Listing § 12.04. (Dkt. No. 10 at 5-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to determine Plaintiff's RFC was less than sedentary. (*Id.* at 12-17.) Third, Plaintiff argues the ALJ failed to give controlling weight to Plaintiff's treating providers and Rita Clark, M.D. (*Id.* at 17-18.) Fourth, and lastly, Plaintiff argues the ALJ improperly admitted, and failed to properly evaluate, testimony of the vocational expert ("VE"). (*Id.* at 18-22.)

### B. Defendant's Arguments

In response, Defendant makes essentially four arguments. First, Defendant argues the ALJ correctly found Plaintiff did not meet Listing § 12.04. (Dkt. No. 12 at 6-14 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly evaluated the

evidence. (*Id.* at 14-19.) Third, Defendant argues the ALJ properly evaluated Plaintiff's impairments throughout the sequential process. (*Id.* at 19-20.) Fourth, and lastly, Defendant argues the Commissioner's burden was met at step five. (*Id.* at 20-24.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the

claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Determined Plaintiff Did Not Meet or Equal the Requirements of Listing § 12.04.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12 at 6-14 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues he meets or equals Listing § 12.04 based on the medical opinions of Rita Clark, M.D., Nafisah Clay, M.S., N.C.C., Jeanne Shapiro, Ph.D., and Stephanie Nelson, LCSW. (Dkt. No. 10 at 6-12 [Pl.'s Mem. of Law].)

The ALJ determined at step two Plaintiff suffered from the severe impairment of depression. (T. 28.) The ALJ then used the "special technique" as laid out in 20 C.F.R. 416.920a(d) to determine whether the impairment meets or equals a listed mental disorder by rating the paragraph B criteria of the Listing of Impairments. *See Kohler v. Asture*, 546 F.3d 260, 265-66 (2d Cir. 2008). To satisfy the "B" criteria, Plaintiff must have two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart. P, Appx 1, § 12.04B.

Plaintiff also argues the ALJ failed to find his impairments met or equaled the criteria of Listing § 12.04C. To meet the "C" requirements, Plaintiff must have a:

> [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ concluded Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functions; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. (T. 33.)

Dr. Graff opined Plaintiff did not have an impairment that met or equaled on of the listed impairments. (T. 664-677.) Dr. Graff opined Plaintiff had "mild" limitations in activities of daily living and maintaining social functioning. (T. 674.) Regarding Plaintiff's activities of daily living, the ALJ also noted Plaintiff lived on his own and was able to do his own meal preparation, housework, shopping, daily living, sweeping, laundry and driving. (T. 39.) Dr. Graff concluded Plaintiff had "moderate" limitations in maintaining concentration, persistence or pace. (*Id.*) He opined Plaintiff never had episodes of deterioration. (*Id.*) The ALJ afforded Dr. Graff's opinion "great weight." (T. 34.) The ALJ reasoned Dr. Graff's opinion was entitled to more weight than the more restrictive opinions of Dr. Clark and Ms. Nelson because his was more consistent with the record and the opinions of other treating sources. (*Id.*)

Dr. Clark completed a set of interrogatories on behalf of the Administration as an independent medical expert. (T. 937-944.) Therein she opined Plaintiff had "marked" difficulties in maintaining social functioning and "marked" difficulties in maintaining concentration, persistence or pace. (T. 938.)[2] Dr. Clark stated that in coming to her conclusion that she relied on the medical opinions of the consultative examiner Dr. Shapiro and the opinion of Stephanie Nelson, LSCW. (*Id.*) Dr. Clark opined Plaintiff had a "marked" limitation on his ability to interact appropriately with supervisor(s) and co-works, and a "marked" limitation on his ability to respond appropriately to usual work situations and to changes in a routine work setting. (T. 939.) Dr. Clark again indicated that she relied on the opinions of Dr. Shapiro in reaching this conclusion. (*Id.*)

Dr. Clark completed a medical source statement in which she opined Plaintiff had a "marked" limitation on his ability to understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decisions. (T. 941.) She concluded Plaintiff's impairment met Listing § 12.04. (T. 942.) Specifically, Dr. Clark stated Plaintiff met Listing § 12.04 under the criteria of A(1)(b,c,d,e,g), B(2) & (3), and met the criteria of 12.04C(2). (*Id.*) Again, Dr. Clark stated she relied on Dr. Shapiro's reports and Ms. Nelson's reports. (*Id.*)

Although Dr. Clark stated she relied on the evaluations of Dr. Shapiro, a reading of Dr. Shapiro's exam and medical source statement indicates Plaintiff suffered a lesser degree of limitation.

Dr. Shapiro performed a consultative psychiatric evaluation of Plaintiff in 2007 and 2011. In 2007 she opined Plaintiff was capable of understanding and following

---

[2] The term marked was defined in Dr. Clark's interrogatories to mirror the definition under 20 C.F.R. §§ 404.1520a and 416.920a. Marked is defined as more than moderate but less than extreme.

9

simple instructions and directions. (T. 649.) Plaintiff was capable of performing simple and some complex tasks with supervision and independently; he was capable of maintaining attention and concentration; he was able to relate to and interact appropriately with others; and, he was capable of dealing with stress. (*Id.*) In 2011 she opined Plaintiff "may have difficulty adequately understanding and following instructions and directions as well as completing some tasks due to memory and concentration deficits." (T. 906.) She observed he "may have difficulty" interacting appropriately with others due to social discomfort and withdrawal; attending work or maintaining a schedule "may be difficult" for Plaintiff; and he did not appropriately deal with stress. (*Id.*)

Dr. Shapiro completed a medical source statement on December 3, 2011. (T. 908-910.) Although she opined she could not comment on Plaintiff's cognitive functioning due to lack of IQ testing and it was "difficult to get a sense" of his cognitive functioning; she did opine Plaintiff had "moderate" limitations in his ability to interact appropriately with the public; interact appropriately with co-workers; and interact appropriately with supervisor(s). (T. 908-909.) She opined he would have "mild" limitations in responding appropriately to usual work situations and to changes in a routine work setting. (*Id.*) The ALJ afforded Dr. Shapiro's opinion's "great weight." (T. 42.)

Ms. Clay also provided a medical source statement. (T. 1571-1574.) Therein she opined Plaintiff was "seriously limited" in many area of mental abilities to perform unskilled work. (T. 1572.) She opined he had "no useful ability" in the area of "maintaining a regular attendance and be punctual within customary usually strict

tolerances." (T. 1572.) She opined he would be unable to deal with the stress of semiskilled and skilled work, and unable to interact with the general public. (T. 1573.) However, she did opine that he was cooperative, very polite, and friendly with appropriate behavior. (T. 1576.) She observed he had "marked" difficulties in maintaining social functioning. (T. 1579.)

Plaintiff's treating physician, Dr. Carmen Frederico opined Plaintiff was "moderately" limited in his ability to interact appropriately with others; maintaining socially appropriate behavior and working at a consistent pace. (T. 1146.) The ALJ afforded his opinion "some weight." (T. 44.)

The ALJ based his step three determination on the opinions of Plaintiff's treating physician, Dr. Frederico; consultative examiner, Dr. Shapiro; and the State agency medical consultant, Dr. Graff. The ALJ's evaluation of the opinions of Dr. Clark and Ms. Clay were appropriate. The ALJ determined Dr. Clark's opinion was not supported by the medical evidence, namely Dr. Shapiro's reports and other objective medical evidence in the record. The ALJ reviewed and discussed the evidence provided by Ms. Clay and provided her opinion "little weight," as it was also not supported by the medical evidence in the record. The ALJ performed a detailed and thorough step three discussion. His evaluation of the medical evidence was complete and proper. Therefore, the ALJ's step three determination was supported by substantial evidence and remand is not necessary.

### B. Whether the ALJ Properly Evaluated Medical Evidence in Formulating His RFC Analysis

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12 at 14-19 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ's RFC analysis failed to take into full consideration Plaintiff's exertional and non-exertional limitations; specifically, Plaintiff's need for a sit/stand option, Plaintiff's "ineffective" ambulation, Plaintiff's inability to lift/push/pull, and Plaintiff's non-exertional mental impairments. In essence, Plaintiff argues the ALJ failed to provide proper weight to the opinions of Ammar Alkassm, M.D. and Dr. Clark. (Dkt. No. 10 12-18 [Pl.'s Memo. of Law].) However, a reading of the record shows, the ALJ's RFC determination is supported by substantial evidence and not, as the Plaintiff alleged, a "manipulation of the available medical evidence to justify the strained conclusions he sought to achieve." (*Id.* at 18.)

In making his RFC determination the ALJ provided a comprehensive and detailed examination of the medical and non-medical evidence in the record. For the reasons outlined in Part IV.A., the ALJ properly afforded "little weight" to the medical opinion of Dr. Clark; therefore, the ALJ did not err in failing to provide more weight to Dr. Clark's functional limitations in his RFC analysis. In assessing the medical evidence, the ALJ provided "greatest weight" to the opinion of the impartial medical consultant, M. Falkove, M.D. (T. 38.)

In terms of exertional limitations, Dr. Falkove opined Plaintiff could frequently lift and carry up to ten pounds and could occasionally lift up to twenty pounds. (T. 1057.) He opined Plaintiff could sit six hours, stand four hours and walk two hours at one time.

(T. 1058.) In an eight hour work day, Dr. Falkove opined Plaintiff could sit six hours and walk for two hours. (*Id.*) Dr. Falkove noted Plaintiff could frequently reach (overhead and all other), handle, finger, feel and push/pull with his right hand. (T. 1059.) He noted Plaintiff could occasionally reach (overhead and all other) with his left hand. (Id.) Dr. Falkove stated he could not answer how often Plaintiff could perform postural activities (climb, balance, stoop, kneel, crouch, crawl). (T. 1060.) Finally, Dr. Falkove opined Plaintiff had no environmental limitations. (T. 1061.)

The ALJ also relied on the opinions of Plaintiff's treating chiropractor, Dr. Petronsio; Plaintiff's orthopedic surgeon, Dr. Carr; and the opinion of consultative examiners Samuel Balderman, M.D. and Kalyani Ganesh, all of whom he afforded "some weight." (T. 39, 40.) In July of 2008 Dr. Petrosino opined Plaintiff had no limitations sitting, standing, or walking. (T. 719.) Dr. Petrosino opined Plaintiff could frequently lift ten pounds and could occasionally lift twenty-five pounds. (*Id.*) Dr. Balderman opined Plaintiff could perform all postural activities and, like Dr. Petrosino, opined he could stand, sit and walk for four hours each in an eight hour workday. (T. 918.) Dr. Ganesh opined Plaintiff had no limitations to sitting, standing or walking. (T. 654.) He opined Plaintiff had mild to moderate limitations for lifting, carrying, pushing and pulling. (*Id.*)

Regarding Plaintiff's mental non-exertional mental limitations, the ALJ afforded "great weight" to the opinion of consultative examiner Dr. Shapiro. (T. 42.) The medical opinion of Dr. Shapiro was also discussed in greater detail in Part IV.A. Therefore, the ALJ's RFC analysis is supported by substantial evidence, namely the medical opinions

of Dr. Falkove, Dr. Shapiro, as well as the opinions of Dr. Petrosino and Plaintiff's other providers.

Plaintiff argues the ALJ failed to provide for a sit/stand option in his RFC analysis in accordance with the medical opinion of Dr. Alkassm (Dkt. No.10 at 14 [Pl.'s Mem. of Law].) Dr. Alkassm's medical source statement is dated November 19, 2013, well after the ALJ's decision dated February 11, 2013. (T. 16.) As the Defendant correctly points out, the medical evidence before the ALJ is void of Plaintiff's need for a sit/stand option prior to the decision date. (Dkt. No. 12 at 16 [Def.'s Mem. of Law].) And further, as the Appeal Council noted in their decision, they will consider evidence that is "new and material" and which relates to the period on or before the date of the ALJ's hearing decision. 20 C.F.R. § 404.970(b). The Appeals Council reviewed Dr. Alkassm's medical source statement and determined although it was new, it was completed after the ALJ's decision, therefore it was not relevant to the time period in question. (T. 2.)

Plaintiff argues Dr. Alkassm's medical source statement provides greater exertional limitations; however, as noted, Dr. Alkassm's statement is not relevant to the time period in question. Finally, Plaintiff's argument that he cannot ambulate effectively is also without support from the medical record. For these reasons, the ALJ did not err in failing to provide for a sit/stand option, greater exertional limitations and ambulatory limitations in his RFC analysis.

Therefore, the ALJ's RFC analysis is supported by substantial evidence. For the reasons stated above, the ALJ provided proper weight to the medical evidence in the record in assessing, including Plaintiff's treating sources and Dr. Clark.

### C. Whether the ALJ Properly Evaluated Plaintiff's Impairments

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12 at 19-20 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ failed to give proper consideration to Plaintiff's severe and non-severe impairments. (Dkt. No. 10 at 18-20 [Pl.'s Mem. of Law].) As outlined in Points IV. A. and B., the ALJ's RFC analysis is supported by substantial evidence and the ALJ properly evaluated all the medical evidence in the record. Therefore, the ALJ gave proper consideration to Plaintiff's impairment in combination at each step of the sequential process, therefore, remand is not warranted.

### D. Whether the Commissioner Met Her Burden at Step Five

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12 at 20-23 [Def.'s Mem. of Law].) The Court adds the following analysis.

As stated in Points IV.A. and B., the ALJ's RFC is supported by substantial evidence. A VE testified that based on a hypothetical presented to her by the ALJ (which ultimately became his RFC), that there were jobs in the national economy which Plaintiff could perform. (T. 47.) The ALJ relied on this testimony in making his determination that Plaintiff was not disabled.

Plaintiff also argues that he was not given advanced notice of the ALJ's intended use of a VE. (Dkt. No. 10 at 20 [Pl.'s Mem. of Law].) The Plaintiff's argument is without merit.

Plaintiff had notice that a VE would be present at his hearing. The Appeals Council Order dated October 5, 2011 remanding the case for further review, specifically ordered the ALJ to "obtain evidence from a vocational expert." (T. 296.) This Order was sent to Plaintiff and his counsel. (T. 293.) Further, the Administration sent Plaintiff and his counsel a "Notice of Hearing" dated October 1, 2012. (T. 341.) Written in bold print on the first page is: "**A VE will be present at the hearing.**" (*Id.*) Plaintiff's counsel responded to the Notice of Hearing in a signed letter dated October 4, 2012. (T. 357.) In his correspondence Plaintiff's counsel acknowledged receipt of the letter dated October 1, 2012 and informed the Administration that he would be present at the time and place shown on the Notice of Hearing. (T. 357.) Therefore, Plaintiff and his counsel had proper notice that a VE would be present at his hearing.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 26, 2015
Syracuse, NY

*/s/ Glenn T. Suddaby*
Glenn T. Suddaby
U.S. District Judge